## Rochester Insurance Co.,

### vs.

## John Martin.

*Held* :—That a corporation has such powers only as are conferred on it by the statute creating it, or under which it is organized, and can legally exercise no power not thus conferred ; that powers not conferred on it are withheld and denied, as much as if the Legislature used express negative language for that purpose.

No person, natural or artificial, can enforce a contract that is void, illegal, or contrary to the policy of the law.

The doctrine of equitable estoppel is only invoked to prevent a wrong, and where the party invoking its protection would in the eye of the law be defrauded, and the other party be guilty of a fraud by the allegation or proof of the truth.

This action was brought in the District Court for Goodhue County. The complaint is in the usual form upon a promissory note. The defendant appeared and filed his answer, to which the plaintiff interposed a demurrer. The Court below sustained the demurrer, and ordered judgment for the plaintiff. Judgment was entered, and the defendant appeals therefrom to this Court. The material portions of the answer, and the demurrer thereto, appear in the opinion of the Court.

Charles C. Willson for Appellant.

I.—The rights, duties and powers of corporations are de-

fined and limited by their charters. If they transcend those limits their acts are *ultra vires* and are void, on the ground of public policy.—*Bissell vs. Mich. S. R. R. Co.*, 22 *N. Y.*, 260, *and cases cited in opinion of Selden J.*

II.—It is the policy and interest of the public to require corporations to confine themselves to the business for which they were created. The members of the corporation pay in capital and take upon themselves liabilities and obligations in the faith that the business contemplated by the charter will be exclusively pursued, and it is a breach of trust on the part of officers and agents of the corporation to divert its capital and assets from the objects contemplated by the members, and expose them to perils and hazards of other enterprises which they never authorized.

And it is also an encroachment upon the rights and interests of the public for a corporation or its officers to exercise franchises, rights and privileges not granted to it or contemplated in its charter.

It would be unlawful for a Railroad Company to do a banking business and discount notes. To prevent such a diversion of business, the common law makes such contracts void on the ground of public policy. Such a contract is no better than any other agreement to do an immoral or unlawful act. *Leavitt vs. Palmer*, 3 *Comstock*, 19; *Talmage vs. Pell*, 3 *Selden*, 328; *Bissell vs. Mich. S. R. R. Co.*, 22 *N. Y.*, 260; *Pearce vs. M. & I. R. R. Co.*, 21 *How U. S.* 442; *Root vs. Godard*, 3 *McLean's R.*, 102; *Root vs. Wallace*, 4 *McLean's R.*, 8; *McGregor vs. D. & D. R. R. Co.*, 16 *L. and Eq.*, 180; *Coleman vs. E. Co. R. R. Co.*, 10 *Beavan*, 1; 24 *Connecticut R.*, 159, 468; *Angell & Ames on Corp.*, Secs. 256 *to* 273.

III.—The case of *Parish vs. Wheeler*, 22 *N. Y.* 494, is authority for defendant. At page 508, Comstock says, "Contracts with corporations made in excess of their powers, which

are purely executory on both sides, and when no wrong will be done if the parties are left in their previous situation, I am willing to agree should not be enforced, because such contracts contemplate an unauthorized diversion of corporate funds and therefore a breach of private trust;" that is, the contract is void at its inception, and will not be enforced until the party is estopped from denying its validity by accepting the avails under it.

When a party has received nothing, and was induced to enter it by false representations, and seeks to abrogate it the moment he discovers the corporation acted beyond its power, the 22 *N. Y.*, 494, sustains his case.

When the writer of the opinion in 22 *N. Y.*, 262, and who so ably discussed the doctrine with *Selden, page* 281, concedes, as he does above, at 22 *N. Y.*, 508, there is no ground on which the demurrer in this case can stand.

IV.—The falsehood and fraud practiced upon the defendant to induce him to insure and give his note, render the contract voidable in equity at his election.

STEARNS & START for Respondent.

I.—The answer of the defendant sets forth facts sufficient to show that the plaintiff is a corporation *de facto;* that proceedings have been taken in professed compliance with a law authorizing its formation as a Live Stock Insurance Company, and an actual user of the franchises granted by that law. *Comp. Stat., p.* 330, *Chap.* 1; *Session Laws* 1860, *p.* 239, *Chap. LXVI; Session Laws* 1864, *p.* 104, *Chap. LII; M. E. Union Church vs. Picket,* 19 *N. Y.,* 482; *U. S. Bank vs. Stearns,* 15 *Wend.,* 314; *Angell & Ames on Corporations, p.* 71 *and cases cited; Angell & Ames on Corporations, p.* 621, *et seq; The B. & A. R. R. Co., vs. Cary Admr,* 26 *N. Y.,* 75.

II.—A defendant who. has contracted with a corporation *de facto* is never permitted to allege any defect in its organization as affecting its capacity to contract, but such objections, if valid, are only available on behalf of the sovereign power of the State. *Steam Navigation Co., vs. Weed,* 17 *Barb.*, 378; *Ryan vs. Vallandingham,* 7 *Ind.* 416; *McCutcheon vs. Steamboat Co.,* 13 *Penn.*, 13; *Chester Glass Co., vs. Dewey,* 16 *Mass.*, 94–102; *John et al., vs. The Farmers, &c., Bank,* 2d *Blackford, Ind.,* 367; *W. Med. Institution vs. Harding,* 11 *Cush.,* 285; *Palmer vs. Lawrence,* 3 *Sandf.*, 170; *Mechanics' Building Ass. vs. Stevens,* 5 *Dwyer,* 676; *The B. & A. R. R. Co., vs. Cary,* 26 *N. Y.,* 75; *Bulkly et al., vs. The Derby Fihing Co.,* 2 *Conn.,* 252; 14 *Penn.,* 83.

III.—The doctrine of *ultra vires* has never been established in this State, and it is doubtful if it will be; the tendency of the later decisions being against it. *Bissell vs. Mich. S. R. R. Co.,* 22 *N. Y.,* 260, *and cases cited by Comstock, J.*

. IV.—The doctrines of *ultra vires* does not apply in this case, because it is not claimed that the plaintiff exercised and powers not granted by the Statute, under which an attempt was made to organize, and under which the plaintiff *de facto* acted. *See all the authorities cited by appellant under his first and second heads.*

V.—The quotation from 22 *N. Y.,* 508, is not applicable, because the contract in question was not executory on both sides, the appellant having actually received a consideration for the note in question in having his risk carried by the Company, besides the contract was not in excess of the powers of plaintiff.

VI.—There can be no fraud in representing that a corporation has authority to do what *de facto* it has authority to do.

Rochester Insurance Company v. John Martin.

*By the Court*—Wilson Ch. J.—On the 30th day of April, 1866, the plaintiff issued to the defendant a policy of insurance, by which it assumed to indemnify him for three years from its date, from any loss by accident, or disease resulting in death, of any of certain horses described in the policy, and the note in suit was given for the premium demanded by the plaintiff for the contract of indemnity.

The plaintiff was organized under Chap. 55 of the General Laws of 1858, as amended by Chap. 66 of the General Laws of 1860, and by Chap. 52 of the General Laws of 1864. Section 2 of its charter or articles of incorporation provides: " Said company is formed for the purpose of making insurance upon dwellings, stores, and all kinds of buildings, and upon household furniture, merchandise, and other property, against loss or damage by fire, lightning, and inland navigation and transportation."  *  *  Appended to a printed copy of the articles of incorporation, which are attached to the paper-book, is the following resolution, dated January 25, 1865: " *Resolved*, That section two of the articles of incorporation be amended so as to read after the word transportation ' *also live stock against death.* ' "

The defendant, among other things, alleges in his answer that he executed and delivered to the plaintiff the note mentioned in the complaint, and another note for $93; and at the same time, and as part of the same transaction, the plaintiff executed and delivered to him a policy of insurance, together with its charter and by-laws; and he " avers that said note in the complaint, and the note for $93, and said policy of insurance, with the said application, charter and by-laws, constitute but one contract and transaction, and the sole and only consideration for each and both said notes was the said policy of insurance."

" The defendant further avers that the plaintiff never

amended its charter; that the pretended amendment thereof appended thereto was never adopted or approved by the members of the corporation or by the directors thereof; and was never signed, or sealed, or acknowledged, or certified by the members of said corporation, or by its directors or officers, or any of them; and that said amendment is not authorized by law."

"The defendant further avers that he is ignorant and unable to read or write; and was informed by the plaintiff, by its agents, at the time he executed said notes, that the said plaintiff had, by its charter, authority to issue said policy and make said contract of insurance; that said statements and representations were then and there false and fraudulent, and were made to defraud this defendant; and this defendant believed said representations and assurances, and relied upon them, and did not discover the contrary, or said fraud or falsehood, until after this suit was commenced. Wherefore the defendant demands judgment, &c."

To this answer the plaintiff demurred, "for that upon its face it does not constitute a counter claim nor a defense."

The Court sustained the demurrer, and ordered judgment for the plaintiff, from which the defendant appealed.

We think the answer sets up a defense to the action. The legal entity called a corporation being the creature of law, and having such powers only as are conferred on it by the statute creating it, or under which it is organized, of course cannot legally exercise *any power* not thus conferred.

All powers not conferred are withheld and denied, just as much as if the Legislature used express negative language for that purpose.

2 *Kent's Com.* 299, *and cases cited in note. Bank of Augusta vs Earle,* 13 *Pet. R.* 588, *and cases cited. Angell & Ames on Corp., Secs.* 111, 271, *and cases cited in notes.*

Rochestea Insurance Company v. John Martin.

"It may be safely assumed," say the Supreme Court of the United States, "that a corporation can make no contracts and do no acts either within or without the statute which creates it, except such as are authorized by its charter." *Bank of Augusta vs. Earle.* The facts admitted here show that the plaintiff had no authority to insure against death by accident or disease, and the note must stand or fall with the policy of insurance, for it was part of the same transaction, and the policy was the only consideration for the note.

This action must therefore fail, for no person, natural or artificial, can enforce a contract that is void, illegal, or contrary to the policy of the law. It is true that a party by his own acts may be estopped from questioning the validity of his contract; but the doctrine of equitable estoppel can have no application to this case against the defendant. It is only invoked to prevent injustice and wrong, and when the party claiming its protection would in the eye of the law be defrauded, and the other party be guilty of a fraud by the allegation or proof of the truth.

The defendant alleges that he was induced to enter into the contract by the false and fraudulent representations of the plaintiff's agent, and that he did not discover the fraud until after the commencement of this action. Under these circumstances he is justified in law and morals in repudiating the contract. He has received no consideration, except the promise which the plaintiff's agent had no right to make, and which the defendant could not enforce, at least without proof that the corporators assented to or authorized the act. It would be a strange perversion of language to say that the doctrine of equitable estoppel would shut the mouth of a defendant from proving the truth to free himself from liability on a contract into which he had been induced to enter by the fraud and falsehood of the plaintiff.

Judgment reversed.